UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Cassidy White, Individually and For Others Similarly Situated<br><br>*Plaintiff,*<br><br>v.<br><br>APFS LLC d/b/a Addison Professional Financial Search<br><br>*Defendant.* | No. 23 CV 5464<br><br>Judge Lindsay C. Jenkins |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Cassidy White, individually and on behalf of others similarly situated, sued her former employer, Addison Professional Financial Search ("Addison"), for violating the overtime provisions in the Fair Labor Standards Act ("FLSA") and Illinois Minimum Wage Law.[1] Before the Court is White's motion to conditionally certify her FLSA claim as a collective action under 29 U.S.C. § 216(b). For the reasons stated below, the motion is granted.

**I.    Background**

Addison is a staffing and recruiting firm headquartered in Chicago with 28 offices nationwide. [Dkt. 44 at 8.][2] Addison places candidates for clients in seven industries (e.g., Finance and Accounting, Healthcare, Information Technology, etc.) known as "verticals", and Addison's recruiters are assigned to a set vertical. White

---

[1]   This case was filed in August 2023, but White took over as lead plaintiff from Juli Marconi in May 2024. [Dkts. 38-40.]
[2]   Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

1

was a recruiter in the Finance and Accounting vertical in Addison's Chicago, Illinois office from November 2019 through August 2021. [Dkt. 40 ¶ 11.]

The thrust of White's motion for conditional certification is that all Addison recruiters, regardless of where they worked or what vertical they serviced, had substantially similar (i) core job functions; (ii) minimal autonomy from Addison in executing those functions; (iii) work expectations that routinely required recruiters to work more than 40 hours per week; and (iv) a salary-based compensation structure through which Addison unlawfully misclassifies recruiters as exempt from the FLSA's overtime pay requirements. [Dkt. 44.] Accordingly, White asks the Court to conditionally certify and permit notice to be sent to the following group: "All Exempt Recruiters employed by Addison at any time during the past 3 years that were paid a salary and no overtime compensation (the 'FLSA Recruiters')." [*Id.* at 7.]

Addison opposes the motion, arguing the proposed nationwide collective is too broad because White has not shown that all "recruiters"—which encompasses several different positions at Addison—are similarly situated across verticals, job titles, and offices. [Dkt. 52.]

## II. Legal Standard

Under the FLSA, "employees are entitled to overtime pay (i.e., one and one-half times the regular rate) for any hours worked in excess of forty hours per week, unless they come within one of the [FLSA's] various exemptions." *Schaefer–LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 572 (7th Cir. 2012). The FLSA also permits employees to bring a collective action for those "similarly situated" employees. 29 U.S.C. § 216(b); *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1049 (7th Cir. 2020). Participation in a

2

collective action is not presumed like in a class action; rather, employees must opt-in to be bound. *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 877 (7th Cir. 2012).

The FLSA does not prescribe procedures for certifying a collective, so district courts are given broad discretion in this area. *Alvarez v. City of Chi.*, 605 F.3d 445, 449 (7th Cir. 2010). Courts in this Circuit, however, typically employ a two-step process. *Nicks v. Koch Meat Co., Inc.*, 265 F.Supp.3d 841, 848-49 (N.D. Ill. 2017). Step one is the conditional certification stage, the purpose of which "is to determine the size and contour of the group of employees who may become collective members and whether these potential members are 'similarly situated.'" *Id.* at 848; *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 974 (7th Cir. 2011) (conditional certification "is a mechanism used by district courts to establish whether potential plaintiffs in the FLSA collective action should be sent a notice of their eligibility to participate and given the opportunity to opt in to the collective action"); *Vargas v. Sterling Engineering, Inc.*, 2020 WL 1288982, at *2 (N.D. Ill. Mar. 18, 2020) (on conditional certification, "the court determines whether to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiff with respect to whether an FLSA violation has occurred.")

Step two occurs after discovery and the opt-in process are completed, and the court's role is to reevaluate certification to confirm the named plaintiff is truly similarly situated to the opt-in plaintiffs. *Heller v. Curaleaf Holdings, Inc.*, 2024 WL 3201207, at *4 (N.D. Ill. June 27, 2024); *Nicks*, 265 F.Supp.3d 841, at 849.

3

At the conditional certification stage, "the plaintiffs have the burden of showing that other potential claimants are similarly situated by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Nicks*, 265 F.Supp.3d 841, at 848-49. "Courts use a 'lenient interpretation' of the term 'similarly situated' in deciding whether plaintiffs meet this burden." *Grosscup v. KPW Management, Inc.*, 261 F.Supp.3d 867, 870 (N.D. Ill. 2017).

A plaintiff can satisfy this burden through "affidavits, declarations, deposition testimony, or other documents." *Heller*, 2024 WL 3201207, at *4. In reviewing this information, the "court does not make merit determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a defendant." *Bergman v. Kindred Healthcare Inc.*, 949 F.Supp.2d 852, 855–56 (N.D. Ill. 2013). But a plaintiff may not satisfy this burden by simply claiming the defendant violated the FLSA; they must point to "an identifiable factual nexus that binds the plaintiffs together as victims of a particular violation of the overtime laws." *Briggs v. PNC Fin. Servs. Grp., Inc.*, 2016 WL 1043429, at *2 (N.D. Ill. Mar. 16, 2016) (citations omitted).

### III. Analysis

#### A. Applicable Standard

Before turning to whether White has satisfied this burden, the Court addresses Addison's argument that an "intermediate" standard of review should apply because the parties have engaged in "significant" discovery related to certification. [Dkt. 52 at 18-19.] The main difference between this intermediate standard and the lenient one

4

described above is that the court will consider the defendant's evidence. *Hunter v. WirelessPCS Chicago LLC*, 2022 WL 864533, at *3 (N.D. Ill. Mar. 23, 2022) ("Under this 'intermediate' approach, both sides' evidentiary submissions are considered in determining whether there is a group of similarly situated employees who may be discovered by sending out an opt-in notice.") (cleaned up).

In this case, the parties agreed to conduct limited discovery related to conditional certification, where each side was allowed to issue discovery requests and take up to four depositions.[3] [Dkt. 20.] Addison took three depositions, responded to White's discovery requests, and produced 776 pages of documents. White took two depositions. [Dkt. 52 at 19.] According to Addison, "this is clearly a sufficient amount of discovery to warrant an intermediate level of review." [*Id.*]

Although the Court appreciates Addison's position, it disagrees. To be sure, the parties have engaged in some meaningful discovery on conditional certification, but the discovery has not been so extensive as to warrant a higher standard. As many Courts in this district have recognized, limited discovery on conditional certification does not result in a higher standard, particularly where defendant has not provided plaintiff with a list of potential claimants and "substantial discovery" is still required with potential collective members. *See e.g., Nicks*, 265 F.Supp.3d 841, at 850 (declining to apply intermediate standard despite some discovery because "Defendants have not produced a list of potential claimants, and the parties have not

---

[3] The parties' agreement also "stipulate[d] that the statute of limitations with respect to any putative plaintiffs' FLSA claims shall be tolled from [November 7, 2023] through the date when the Court rules on conditional certification." [Dkt. 20 at 2.]

yet engaged in discovery with the potential class members or in extensive discovery explicitly focused on the 'similarly situated' issue"); *Girolamo v. Cmty. Physical Therapy & Assocs., Ltd.*, 2016 WL 3693426, at *3 (N.D. Ill. July 12, 2016) (intermediate standard inappropriate despite the parties exchanging documents and taking depositions because "Defendants have not produced a list of potential plaintiffs, and the parties have not had an opportunity to engage in discovery with the potential class members"); *Rossman v. EN Engineering, LLC*, 2020 WL 5253861, at *3 (N.D. Ill. Sept. 3, 2020) ("Here, too, some discovery has been completed, but at the end of the day, it is still very much ongoing. And significantly, Rossman has not yet had a full opportunity to engage in targeted discovery with the other potential class members"); *Vargas*, 2020 WL 1288982, at *2 (same); *Heller*, 2024 WL 3201207, at *5 (same).

Likewise, White does not have a list of potential opt-in plaintiffs, and has not been able to engage in discovery with them. [Dkt. 59 at 5-6.] In addition, much of the evidence that Addison asks the Court to consider in denying conditional certification—declarations from current Addison employees, for example—was not produced during the limited discovery period. [*Id.* at 9-10.] It would be unfair to White to raise the standard of review when she has not had a full opportunity to gather evidence. It is also unnecessary, as step two of the conditional certification process allows both parties to make fulsome argument on this issue.

Accordingly, the Court will conditionally certify White's collective so long as she has made "a modest factual showing sufficient to demonstrate that" she "and

6

potential plaintiffs together were victims of a common policy or plan that violated the law." *Nicks*, 265 F.Supp.3d 841, at 848-49.

### B. The Merits

White has met her burden. The core of White's argument for why conditional certification is appropriate is that all Addison recruiters, regardless of vertical or geographic location, perform the same general functions and are compensated in the same unlawful way. More specifically, all Addison recruiters cold call candidates, read client position listings and candidate resumes, communicate with candidates, match candidates with clients, schedule interviews, and record their efforts in Addison's software. White further avers that through call scripts, trainings, and other directives, Addison robs recruiters of discretion in performing these already routine tasks. And because Addison sets metrics for recruiters that are difficult (if not impossible) to meet during normal business hours, recruiters often work overtime. Nevertheless, at least according to White, Addison (mis)classifies recruiters as exempt and pays them a salary with no prospect of overtime pay. [Dkt. 44 at 8-14.] Taken together, White has shown Addison's recruiters are subject to "a common policy or plan" whereby Addison intentionally refuses to pay recruiters overtime by misclassifying them as exempt.

White has also substantiated her theory with competent evidence. *Heller*, 2024 WL 3201207, at *4. White cites to deposition testimony from Addison recruiters and executives, as well as Addison's discovery responses and document productions. For example, the Chicago branch manager noted that above all, a recruiter's role at Addison is to place people in roles. [Dkt. 44-7 at 13.] Addison's Executive Vice

7

President of Human Resources agreed in her deposition that the "core functions" Addison recruiters use to achieve this purpose include cold calling, reading resumes, screening candidates, and scheduling and preparing for interviews. [Dkt. 44-6 at 19.] These are the same tasks three recruiters at Addison—White (Finance and Accounting, Chicago); Christian Salvo (Finance and Accounting, Houston); and Jessaka Arrasmith (Information Technology, Schaumburg)—identified during their depositions and are reflected in Addison's online job summary for the recruiter position. [Dkt. 44 at 10.] White also presented sample call scripts and email templates which suggest Addison dictates how recruiters perform these functions. [*Id.* at 12.]

White also supported her claims regarding the number of hours worked. The three Addison recruiters mentioned above all testified that they routinely worked more than 40 hours per week, that other recruiters in their office did likewise, and that a reason recruiters worked such long hours was to meet company-wide metrics. [Dkt. 44 at 13-14.] Moreover, recruiters' managers were aware their recruiters were working more than 40 hours per week because they were often copied on emails sent by the recruiters well after standard business hours. [*Id.* at 14-15.] Finally, Addison admits all recruiters have a similar compensation structure that does not pay overtime. [*Id.* at 9.]

Through this constellation of evidence, White has met her modest factual burden of showing she is similarly situated to other Addison recruiters who are all part of Addison's common plan to avoid paying recruiters overtime.

8

Addison makes several arguments in response, many of which are inappropriate at the conditional certification stage.[4] Addison's overarching point, though, is that the "recruiter" position at Addison is too broad to apply to a single collective. Addison points to roughly a dozen titles at Addison that could fall within the definition of "recruiter", and argues that there are salient differences in a recruiter's role based on their vertical and office. [Dkt. 52 at 7-17.]

But these same types of differences did not stop the Court in *Vargas* from conditionally certifying the collective. In *Vargas*, the plaintiff sought to certify a collective for recruiters at a staffing agency that involved five titles, different industries, and both a "house" and "commercial" team. *Vargas*, 2020 WL 1288982, at *1. The defendant argued conditional certification would be inappropriate because of "substantial differences in … job roles" and "because the analysis of whether a recruiter was properly classified as exempt would be highly individualized." *Id.* at *3. The court disagreed, noting the defendant's vice president testified "that the primary role of recruiters is to find potential candidates to be matched for positions with Sterling clients", which was adequate at the conditional certification stage. *Id.*; *see also Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 848 (N.D. Ill. 2008) (conditionally certifying collective that involved pharmaceutical representatives worked within six different departments because they "have the same essential responsibility: calling on physicians and promoting Defendant's pharmaceutical products"); *Nicks*, 265

---

[4] Because the Court is applying the "lenient" conditional certification standard, it is not considering Addison's arguments related to the merits or that rely on Addison's evidentiary submissions. *Bergman*, 949 F.Supp.2d 852, at 855–56

F.Supp.3d 841, at 854 (conditionally certifying collective where plaintiff submitted evidence from workers at multiple locations stating they performed similar duties); *Rossman*, 2020 WL 5253861, at *3-4 (same). Perhaps White's proposed collective will ultimately prove too broad, but pointing to job discrepancies at the conditional certification stage is insufficient.

Addison also argues that White failed to demonstrate that the alleged unlawful practice applies nationwide because she has not submitted any evidence from "Addison's twenty-five other Branches, four other verticals, or any non-conclusory information regarding the other positions Plaintiff may be seeking to include in her collective, including their pay structure, rate of pay, hours worked, job duties, training and supervision." [Dkt. 52 at 22.] The Court disagrees. First, it would be unfair to penalize White for not submitting evidence related to every office and vertical where Addison has refused to provide White with a list of potential claimants. [Dkt. 59 at 6.] More importantly, as discussed above, White cited to documents and testimony from Addison executives, managers, and recruiters which support the conclusion that recruiters nationwide perform the same core functions, are asked to meet the same metrics, and are compensated the same. This allows the Court to "envision a scenario where Plaintiff[] and potential collective action members are similarly situated" in all offices across all verticals. *Slaughter v. Caidan Mgmt. Co., LLC*, 317 F. Supp. 3d 981, 989 (N.D. Ill. 2018).

Finally, Addison contends White has not pointed to a common plan or policy beyond classifying recruiters as exempt. [Dkt. 52 at 25-26.] But this is not true. White

10

argues that Addison subjects recruiters to the common plan of intentionally misclassifying recruiters as exempt knowing that they will work overtime. [Dkt. 59 at 12–13.] Put differently, Addison "had a company-wide policy or plan that it would not pay overtime pay to [recruiters]." *Jirak*, 566 F.Supp.2d 845, at 848; *Vargas*, 2020 WL 1288982 (conditionally certifying collective based on defendant's purported plan to classify recruiters as exempt and not pay them overtime.)

The Court grants White's request for conditional certification because she has met her low burden. Addison will of course have an opportunity to move for decertification once the opt-in process and discovery are completed.

### C. Notice

On the issue of notice, the Court agrees with Addison that judicial economy would be best served by the parties meeting and conferring to discuss parameters before the Court weighs in. [Dkt. 52 at 29.] Counsel for both parties has experience working together on these issues from prior litigation, [*see id.* at 18], and the Court is confident the parties can work together to reach an agreement without Court intervention. To facilitate discussion, the Court directs the parties to Docket Entry No. 29 in *Carillo v. Tommy's Redhots, Inc.*, Case No. 23-cv-17016, which is an example of notice procedures previously approved by this Court.

## IV. Conclusion

White's motion for conditional certification is granted. As expeditiously as possible, but by no later than by October 7, 2024, the parties are ordered to meet and confer regarding proper notice protocols. To the extent the parties are unable to agree on any issue(s), by no later than October 10, 2024, the parties are to file a joint

11

statement on the docket that succinctly describes the disagreement and each parties' position. The parties should also submit a proposed notice protocol (or competing protocols, if there are disagreements) in Word format to the Court's proposed order inbox, Proposed_Order_Jenkins@ilnd.uscourts.gov.

Enter: 23 CV 5464
Date: September 30, 2024

_____
Lindsay C. Jenkins
United States District Judge