**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CASSIDY WHITE, Individually and For Others Similarly Situated,<br><br>       Plaintiff,<br><br>v.<br><br>APFS LLC d/b/a ADDISON PROFESSIONAL FINANCIAL SEARCH,<br><br>       Defendant. | Civil Action No. 1:23-cv-05464 |

**DEFENDANT APFS, LLC d/b/a ADDISON GROUP'S REPLY IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**

Defendant APFS, LLC d/b/a Addison Group ("Addison"), by and through its undersigned attorneys, submits this Reply in Support of its Motion for Summary Judgment as to Plaintiff Cassidy White's ("Plaintiff" or "White") First Amended Class and Collective Action Complaint (Dkt. 40).

**INTRODUCTION**

Plaintiff's Response to Addison's Motion for Summary Judgment ("Response") fails to refute the undisputed facts which prove that Plaintiff was administratively exempt under both the Fair Labor Standards Act ("FLSA") and Illinois Minimum Wage Law ("IMWL") in her position as a Recruiter at Addison. As set forth in Plaintiff's Motion (*see* Dkt. 48), Plaintiff's own deposition testimony supports Addison's claims that Plaintiff's duties as a Recruiter render her exempt as a matter of law.  In an effort to refute Addison's claims, Plaintiff introduces a new declaration in her Response wherein she attempts to retract her deposition testimony which clearly

1

establishes that her job duties are exempt. This declaration, however, does nothing more than contradict Plaintiff's sworn deposition testimony and is therefore inadmissible.

Plaintiff attempts to minimize her primary duties as a Recruiter by characterizing them as "entry-level" and "clerical." However, Plaintiff's own deposition testimony and relevant case law show that Plaintiff's primary duties were directly related to Addison's business operations and its customers as they concern the recruiting and placement of contract employees. Furthermore, Plaintiff cites her use of Addison templates and policies and supervision by her manager to support her argument that she did not exercise discretion and independent judgment when performing her duties as a Recruiter. This argument is misguided. The undisputed factual record shows that Plaintiff was not required to use or follow Addison templates and policies when performing her duties, and the fact that Plaintiff received training and supervision from her manager does not negate her use of discretion and independent judgment.

Finally, Addison did not err when it analyzed Plaintiff's FLSA and IMWL claim together, as the Seventh Circuit allows for such an analysis. In any event, any differences between the two statutes are immaterial to Addison's motion for summary judgment.

Plaintiff has failed to demonstrate a material issue of fact as to whether her position as a Recruiter was exempt, and Addison's Motion should therefore be granted.

## ARGUMENT

### A. Addison's Motion is Timely.

Plaintiff argues that Addison's Motion is premature because the parties have not yet completed merits discovery, and such a motion should instead be filed only after merits discovery has closed. (Dkt. 64 at 14-15). There is no requirement, as Plaintiff suggests, that merits discovery be completed before a party moves for summary judgment. On the contrary, it is well-established

2

that "Federal Rule of Civil Procedure 56(b) authorizes parties to move for summary judgment "at any time" until 30 days after the close of discovery, regardless of whether discovery has been completed or even begun." *F.C. Bloxom Co. v. Tom Lange Co. Int'l, Inc.,* 109 F.4th 925, 935 (7th Cir. 2024), *reh'g denied,* No. 22-3268, 2024 WL 4108790 (7th Cir. Sept. 6, 2024).

Moreover, Plaintiff did have the opportunity under the Parties' joint discovery schedule to depose Addison's corporate representative and up to three fact witnesses during Phase One Discovery (*see* Dkt. 20 at 2), and Plaintiff did conduct written discovery and deposed both her former supervisor and Addison's Executive Vice President of Human Resources during Phase One Discovery. Plaintiff has subsequently conceded that she does not need any further discovery to respond to Addison's summary judgment motion. (Dkt. 75 at ¶ 5).[1]

### B. Plaintiff's Declaration Contradicts Her Sworn Deposition Testimony and Should Be Disregarded.

In an attempt to circumvent her sworn deposition testimony that clearly establishes that her job duties as a Recruiter are exempt, Plaintiff's Response introduces different and inconsistent facts through a declaration. (*See* Dkt. 63-2). It is well-established that a plaintiff cannot defeat summary judgment with a declaration that contradicts her own sworn deposition testimony. *See e.g., LaFary v. Rogers Grp., Inc.*, 591 F.3d 903, 908 (7th Cir. 2010) ("[a] plaintiff cannot defeat a motion for summary judgment by contradict[ing] deposition testimony with later-filed contradictory affidavits."); *Von Holdt v. A-1 Tool Corp.,* No. 04 C 04123, 2012 WL 13048975, at *1 (N.D. Ill. Sept. 29, 2012) ("It is well-settled in this Circuit that litigants may not manufacture

---

[1] Plaintiff incorrectly states that the statute of limitations "continues to run for the putative class members" while Addison's Motion is pending. (Dkt. 64 at 14). However, the Parties' discovery schedule clearly states that "the statute of limitations with respect to any putative plaintiffs' FLSA claims shall be tolled from the time of filing of this Joint Status Report through the date when the Court rules on conditional certification of Plaintiff's proposed FLSA collective." (Dkt. 20 at 2).

3

issues of fact by submitting affidavits that contradict the substance of their prior deposition testimony.").

Plaintiff, for example, testified at length during her deposition that she used her judgment during interviews with potential candidates to determine whether the candidates (i) had experience in the finance and accounting industry; and (ii) would be good to work with. (Dkt. 47 at ¶ 29). Yet, in her new declaration, Plaintiff attempts to backtrack by stating that she conducted these interviews "according to Addison's interview templates." (Dkt. 63 at ¶ 12). Plaintiff's Response and new declaration contain various similar assertions that contradict her sworn deposition testimony. *See* infra at pp. 7-9.

To the extent that Plaintiff's declaration contradicts her own sworn testimony, it fails to create a disputed issue of material fact and should therefore be disregarded by this Court. *See e.g., See LaFary v. Rogers Grp., Inc.*, 591 F.3d 903, 908 (7th Cir. 2010) ("[a] plaintiff cannot defeat a motion for summary judgment by contradict[ing] deposition testimony with later-filed contradictory affidavits."); *Velez v. City of Chicago,* 442 F.3d 1043, 1049 (7th Cir. 2006) ("[W]here a deposition and affidavit are in conflict, the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken, perhaps because the question was phrased in a confusing manner or because a lapse of memory is in the circumstances a plausible explanation for the discrepancy"); *Von Holdt v. A-1 Tool Corp.,* No. 04 C 04123, 2012 WL 13048975, at *1 (N.D. Ill. Sept. 29, 2012) ("It is well-settled in this Circuit that litigants may not manufacture issues of fact by submitting affidavits that contradict the substance of their prior deposition testimony.")

**C. Plaintiff's Primary Duties as a Recruiter Were Directly Related to the General Business Operations of Addison and Its Customers.**

In her Response, Plaintiff contends that her primary duties as a Recruiter at Addison were limited to "making cold calls, calling candidates, reading requirements (set by someone else) for positions she was assigned to fill, reading candidate qualifications and resumes, conducting phone screens of candidates, scheduling candidate interviews, and using Addison's designated software to complete and document each of those tasks." (Dkt. 64 at 8). Plaintiff then attempts to characterize these duties as "largely entry-level, clerical tasks subject to oversight by her manager and dictated by Addison's templates and procedures." (Dkt. 64 at 8). However, Plaintiff's attempt to minimize her duties to prevent application of the administrative exemption is at odds with her deposition testimony, where she stated that as a Recruiter, she was responsible for the following duties:

- identifying qualified candidates from a candidate database;
- conducting interviews of those candidates to ascertain their skills, interests and availability for a new position;
- informing candidates of the open job positions and related expectations;
- ascertaining candidates' expectations with respect to pay, benefits, etc.;
- editing candidate resumes;
- identifying open job orders in which candidates would most likely be interested in based on their qualifications and preferences;
- informing candidates of job orders they may be interested in;
- submitting candidates to job orders by drafting written submissions;
- preparing candidates for job interviews with the client companies;
- negotiating candidates' offers from the client companies;
- checking in with the candidates and the client companies once the candidates commenced their positions at the client companies; and
- addressing issues arising during the candidates' assignments at clients.

(Dkt. 47 at ¶¶ 16, 19-23, 25).

That Plaintiff performed data entry or other non-exempt tasks ancillary to her primary duties does not render her Recruiter position non-exempt. *See e,g., Lott v. Howard Wilson Chrysler-Plymouth, Inc.,* 203 F.3d 326, 332 (5th Cir. 2000) ("…the facts establish that,

5

notwithstanding the amount of time [plaintiff] performed bookkeeping and clerical work, her primary duties directly related to and were important to both [defendant]'s management policies and its general business operations, and required the exercise of discretion and independent judgment."); *Murray v. Ohio Cas. Corp.,* No. 2:04-CV-539, 2005 WL 2373857, at *6 (S.D. Ohio Sept. 27, 2005) ("In the Court's view, the fact that Plaintiff had to perform various secretarial-type tasks to accomplish her primary duties does not diminish or create a genuine issue of material fact as to what her primary duties in fact were.").

Despite Plaintiff's flawed and condensed characterization of her job duties, her actual job duties are vitally important to Addison's business operations and its customers. Addison provides a service to its customers by finding, selecting and placing qualified employees for its customers through its Recruiters. Addison's customers rely on Recruiters such as Plaintiff to handle important aspects of the hiring process, including recruiting, screening, interviewing, evaluating, selecting, and hiring employees to work for them. The primary duties Plaintiff sets forth in her Response are exactly the type of duties that Addison's customers rely on Addison to handle. *See Andrade v. Aerotek, Inc.,* 700 F. Supp. 2d 738, 745–46 (D. Md. 2010) ("courts have found that employees in a recruiting or staffing position perform work directly related to the management or business operations of their employers or their employers' clients.") (collecting cases).

Plaintiff also takes the position that her primary job duties are similar to those duties in *Ogden v. CDI Corp.*, No. CV08-2180 PHX DGC, 2010 WL 2662274 (D. Ariz. July 1, 2010), and dissimilar to the duties set forth in the three cases cited by Addison in its Motion: *Andrade*, *Quintiliani v. Concentric Healthcare Solutions, LLC*, 944 F.Supp.2d 738, 741 (D. Ariz. 2013), and *Drake v. Aerotek,* 2016 WL 80672 (W.D. Wis. Jan. 7, 2016). Plaintiff's position does not hold up,

6

however, because the facts here are more analogous to the facts in *Andrade, Quintiliani,* and *Drake*, rather than the facts in *Ogden*.

For example, Plaintiff argues that the duties performed by the plaintiff in *Andrade* directly related to the defendant's business operations because she "performed additional administrative duties like "communicat[ing] directly with [defendant]'s clients on a regular basis," and "managed the contractors once they were hired." (Dkt. 64 at 8). According to Plaintiff, these duties surpass the duties she performed at Addison, which included "simply screen[ing] applicants based on minimum qualifications" and "simply send[ing] her manager prospects who generally met the minimum qualifications." *Id.* Plaintiff again misstates her duties in an effort to distinguish *Andrade,* and fails to acknowledge that the *Andrade* court noted that though plaintiff "did not have the power to make ultimate employment decisions for [defendant]'s clients, the record shows that she exercised considerable discretion with regard to the selection of candidates to be sent to the client's hiring manager for approval." *Andrade,* 700 F. Supp. 2d at 747. Further, the plaintiff in *Andrade* "developed her own recruiting strategies, compared contractors' skills to the applicable job descriptions, interviewed candidates, and determined whether they were a good fit based on her knowledge of the clients' personality." *Id.* These duties are precisely the duties that Plaintiff admits she performed in her recruiting role at Addison. *See* Dkt. 47 at ¶¶ 16, 26.

The plaintiff in *Quintiliani* was a staffing coordinator whose job duties also parallel Plaintiff's job duties as a Recruiter at Addison and were found to be directly related to defendant's business operations. Specifically, the staffing coordinators in *Quintiliani* searched a company database for potential candidates, conducted telephone interviews, and recruited "best fit" candidates. *Quintiliani,* 944 F.Supp.2d at 746. Here, Plaintiff also searched Bullhorn for candidates, conducted phone interviews of potential candidates, and recruited candidates who she

deemed to be a "good fit." *See* Dkt. 47 at ¶¶ 20-29. Plaintiff also edited candidate resumes, negotiated pay, and kept in touch with the external workforce, which is even more responsibility than the staffing coordinators had in *Quintiliani. Id.* at ¶¶ 30-34, 45-46.

Finally, Plaintiff argues that the plaintiff in *Drake* admitted that he performed "numerous exempt duties" that vary from Plaintiff's duties, including, "developing a 'sourcing strategy,'" acting as a human resources advisor, and taking responsibility for "most contractor-related issues." (Dkt. 64 at 9). Plaintiff cherry picks these "numerous" duties and conveniently fails to mention that the plaintiff in *Drake* also admitted to performing the following duties: (i) using the interviews he conducted to find the "perfect fit" for a client "by going beyond the candidate's written qualifications and looking at his or her "subjective skill set and behavioral set and whatever else"; (ii) deciding who would continue in the hiring process; (iii) making recommendations on the best candidates; and (iv) negotiating pay rates with contractors. *Drake,* 2016 WL 80672 at 2. These duties are nearly identical to those duties performed by Plaintiff. *See* Dkt. 47 at ¶¶ 25-32.

Plaintiff also emphasizes that the fact that the plaintiff in *Drake* "agreed his duties met the administrative exemption's requirements" (*Id.*), tactically omitting that such an agreement by plaintiff concerned the exemption requirements under only the FLSA, not Wisconsin state law, which was the law at issue in the case. (Dkt. 64 at 9). Furthermore, the fact that Plaintiff does not agree with Addison that her duties met the requirements of the administrative exemption is not a basis for denying summary judgment when her factual admissions dictate this result.

Plaintiff instead likens her duties to those of the recruiter plaintiff in *Ogden.* The court in *Ogden,* however, described the plaintiff as "the personnel clerk who screens applicants and does not "formulate, interpret or implement employment policies," including because the defendant failed to set forth evidence that the plaintiff "managed employees while they were on assignment"

8

or "discussed the ongoing performance of the candidates with the clients." *Ogden,* 2010 WL 2662274 at 5. Here, however, Plaintiff testified that she did manage candidates once they had been placed with clients, including by relaying feedback from candidates to clients and vice versa, and by keeping in contact with candidates after they had been placed. (Dkt. 47 at ¶¶ 45-47). In other words, Plaintiff's duties as a Recruiter at Addison continued beyond the placement of a candidate at one of Addison's clients, whereas the duties of the plaintiff in *Ogden* did not continue beyond candidate placement.

**D. Plaintiff Exercised Discretion and Independent Judgment When Performing Her Primary Duties.**

Plaintiff's Response asserts that Addison has failed to establish that Plaintiff exercised discretion and independent judgment with respect to her primary duties. However, Plaintiff's Response fails to address the tasks detailed in Addison's Motion that demonstrate her exercise of discretion and independent judgment. Instead, Plaintiff generally argues, without support, that she was unable to exercise any discretion or independent judgment due to (i) her required use of Addison templates and policies and (ii) supervision from her manager.

Plaintiff relies heavily on her alleged use of Addison's "step-by-step policies" and "templates" as a basis for her assertion that she did not exercise discretion and independent judgment. (Dkt. 64 at 11). Plaintiff's declaration even states that "Addison managers distributed templates to the recruiters and expected us to use them." (Dkt. 63 at ¶ 18). However, when examples of these template and policy documents were discussed during the depositions in this case, it was clear that these documents were simply tools that a Recruiter ***could*** use when performing their duties or as an aid to learning how to do so. *See e.g.,* Dkt. 47-1 at 107:12-108:24; Dkt. 63-3 at 38:14-23, 75:23-76:16, 87:8-21; Dkt. 63-5 at 203:3-204:5.

Plaintiff also contends that the alleged supervision and required approval from her manager shows that she did not exercise discretion and independent judgment. This contention is without merit. Plaintiff asserts in her declaration that "Recruiters at Addison are subject to stringent oversight at all times and for all aspects of our jobs" (Dkt. 63 at ¶ 20), but such an assertion is contradicted by Plaintiff's deposition testimony. For example, Plaintiff testified that she was solely responsible for deciding which candidates she would contact for a specific job order (Dkt. 47 at ¶ 19) and used her own judgment during calls with potential candidates to determine (i) what sort of position the candidate was interested in; (ii) whether the candidate would be a good fit for an open position; and (iii) whether the candidate had the requisite industry experience for the open position. *Id.* at ¶ 26.

Furthermore, the fact that an employee's work is subject to approval does not mean that the employee does not exercise discretion and independent judgment for the purpose of the administrative exemption. If this were the case, virtually no employee could satisfy the administrative exemption as most employees are subject to some supervision. *See e.g.,* 29 C.F.R. § 541.202(c) ("employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level. Thus, the term "discretion and independent judgment" does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review."); *Andrade,* 700 F. Supp. 2d at 747 ("the fact that [plaintiff]'s supervisors reviewed her recommendations to the client does not bar application of the administrative exemption.").

Plaintiff attempts to liken her duties to those duties contemplated in *Perry v. Randstad Gen. Partner*, 876 F.3d 191 (6th Cir. 2017) and *Sierra v. New England Pers. of Hartford, LLC*, 2017 WL 3711579 (D. Conn. Aug. 28, 2017) to show that she did not exercise discretion and

independent judgment. These cases, however, are distinguishable. The court in *Perry* found that staffing consultants failed to exercise discretion and independent judgment because the staffing consultants "had relatively little freedom from direct supervision" and "fulfilled their sales duties by merely following [defendant]'s well-established techniques and procedures to meet the pre-determined quotas." *Perry,* 876 F.3d at 208. Similarly, the court in *Sierra* found that the plaintiff recruiter's work was "entirely subordinate to and under the independent review and direction of [her supervisor]." *Sierra,* 2017 WL 3711579 at *4. The same cannot be said for Plaintiff here. Plaintiff had plenty of freedom from direct supervision, as she testified that she exercised independent judgment in determining (i) whether a person was interested in a contract role at Addison; (ii) whether a candidate would be a good fit for a certain job order within a certain industry; (iii) which candidate[s] had the requisite skills and experience for a particular job order; (iv) which candidate[s] to submit to a job order; (v) how to best present a candidate to a client; and (vi) how to negotiate with candidates about their salary expectations. *See* Dkt. 47 at ¶¶ 25, 31, 34, 38.

Plaintiff also endeavors to show that she did not act independently or with discretion by (i) stating in her declaration that her supervisor, Lauren Sherer, "expressed she felt [Plaintiff] wasted time when [she] relied on [her]self or tried to figure things out [her]self. She said that [Plaintiff] hadn't been in the office long enough to work independently" (Dkt. 63 at ¶ 22); and (ii) citing her 2020 performance review, wherein Ms. Sherer stated that she did not want Plaintiff "wasting too much time relying on herself when she hasn't been in the office with us long enough to have all of the tools she needs 100% of the time yet." (Dkt. 63-6). However, this evidence set forth by Plaintiff actually shows that (i) she was acting independently with respect to her duties; and (ii) acting

11

independently as a Recruiter at Addison was supported so long as a Recruiter had worked "long enough" and developed the requisite skills.

### E. Addison Did Not Incorrectly Analyze Plaintiff's FLSA and IMWL Claims Together.

Plaintiff asserts that Addison's Motion should be denied solely because Addison erred when it failed to analyze the administrative exemption under the IMWL, and instead only analyzed the administrative exemption under the FLSA. This assertion is unsupported by case law in the Seventh Circuit and does not warrant denial of Addison's Motion.

As an initial matter, in 2004, the DOL issued new regulations amending the test for the administrative exemption under the FLSA. Prior to these new regulations, the IMWL's language mirrored the FLSA's with respect to the administrative exemption. As Plaintiff's Response explains, the IMWL declined to adopt the language set forth in the 2004 regulations with respect to the administrative exemption. What Plaintiff's Response fails to explain, however, is the fact that the Seventh Circuit has stated that the only two differences between the language set forth in the pre-2004 regulations and the 2004 regulations "are the salary requirement…and the additional explanation that an administrative employee must exercise discretion or independent judgment "with respect to matters of significance." The Seventh Circuit further explained that "[w]hile that qualifying phrase was not explicitly part of the old test, it was built into the old rule's definition of "discretion and independent judgment" found elsewhere in the applicable regulations…In other words, the new "general rule" is essentially a simplified restatement of the old "short test." *Roe-Midgett v. CC Servs., Inc.,* 512 F.3d 865, 870 (7th Cir. 2008). The Seventh Circuit has never held that courts must apply the different tests in both the FLSA and the IMWL when analyzing whether the administrative exemption applies to similar FLSA and IMWL claims.[2]

---

[2] Plaintiff cites *Kennedy v. Commonwealth Edison Co.,* 410 F.3d 365, 375–76 (7th Cir. 2005) for the proposition that "*Kennedy* doesn't justify ignoring the differences between the FLSA and IMWL." (Dkt.

Instead, courts in this district analyzing claims under both the FLSA and IMWL have applied the administrative exemption set forth in the FLSA to both claims. *See e.g., Markle v. Drummond Advisors, LLC*, No. 19-CV-02789, 2022 WL 4604192, at *3 (N.D. Ill. Sept. 30, 2022) ("The IMWL, Illinois' state-law counterpart to the FLSA, contains the same requirements with respect to overtime and incorporates the FLSA standards regarding exemptions…Thus in determining if an exemption applies, courts interpret the overtime requirements under both acts in the same manner and if Plaintiff's "FLSA claims fail," then her "related state law claims under the IMWL must fail as well.'") (internal citation omitted); *Marski v. Courier Express One, Inc.,* No. 19 CV 4132, 2021 WL 4459512, at *13 (N.D. Ill. Sept. 29, 2021) (Applying the administrative exemption and stating "[t]he burden of establishing that an exemption applies falls upon the employer…Because the IMWL contains the same requirements with respect to overtime and incorporates the FLSA standards, *see* 820 Ill. Comp. Stat. 105/4a, this Court considers together Plaintiff's FLSA and IMWL claims for unpaid overtime.").

Accordingly, under Seventh Circuit authority, Plaintiff's Recruiter role satisfies the administrative exemption under both the FLSA and the IMWL.

## CONCLUSION

WHEREFORE, Defendant APFS, LLC d/b/a Addison Group respectfully requests that this Court grant its motion for summary judgment and dismiss White's claims with prejudice.

Dated: October 30, 2024

Respectfully submitted,

By: */s/ Michael R. Phillips*
Michael R. Phillips
Katharine P. Lennox
Dakota D. Treece
McGuireWoods LLP
77 West Wacker Drive, 41st Floor

---

64 at 3). *Kennedy,* however, also does not support Plaintiff's argument that Addison should have separately analyzed the FLSA and IMWL claims.

Chicago, IL 60601
T: (312) 849-8100  /  F: (312) 849-3690
mphillips@mcguirewoods.com
klennox@mcguirewoods.com
dtreece@mcguirewoods.com

*Attorneys for Defendant APFS, LLC d/b/a*
*Addison Group*

14

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2024, I electronically filed the foregoing *Defendant APFS, LLC d/b/a Addison Group's Reply in Support of Its Motion for Summary Judgment* with the Clerk of the Court using the CM/ECF system, which will send notification and service of such filing to all registered counsel of record.

*/s/ Michael R. Phillips*
Michael R. Phillips

15